UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANDREW S. FAIRFIELD, TRACY FAIRFIELD, et al Plaintiffs v. MASSACHUSETTS STATE CARPENTERS HEALTH BENEFIT FUND, HARRY R. DOW and JAMES W. BUCKLEY, JR., Defendants. | ) Civil Action No. 04-12604-PBS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' MEMORANDUM IN SUPPORT
## OF THEIR MOTION TO DISMISS

Defendants, the Massachusetts Carpenters Health Benefits Fund, Harry R. Dow and James W. Buckley, Jr. respectfully submit this memorandum of law in support of their motion to dismiss under Rule 12(b)(1) and (6).

### PRELIMINARY STATEMENT

**A. Introduction**

While styled essentially as a claim for benefits, this case rests on a dispute about whether plaintiff Andrew Fairfield fully reimbursed the defendant Massachusetts State Carpenters Health Benefits Fund from the proceeds from the settlement of a personal injury claim in accordance with both the Fund's rules governing reimbursement and with a reimbursement agreement executed by plaintiff as a condition for receiving benefits, and whether the Fund may withhold future benefits as a offset against amounts that the Fund asserts plaintiff Fairfield failed to reimburse.

The evidence in this case, if allowed to proceed, will demonstrate that the Fund is a multi-employer welfare benefit plan that is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1001 et seq, that provides health benefits to members of the Carpenters Union working in Massachusetts and northern New England and their families. The Fund has a policy requiring plan participants who recover on tort claims for injuries caused by third parties to reimburse the Fund for all or a portion of the benefits the Fund paid in connection with the injury, depending on the amount of the recovery.

The Fund paid over $10,000 in benefits in connection with injuries sustained by plaintiff Andrew Fairfield in an automobile accident. Mr. Fairfield received an offer of $20,000 from the auto insurer involved, which represented the policy limit of the liability insurance policy covering his claim. Mr. Fairfield was dissatisfied with the amount he would net from the settlement after paying his attorney's fees and the Fund's lien. He terminated his first attorney and shopped around for someone else in an effort to recover more on his claim. He finally found a third attorney who devised a plan to restructure the settlement by adding his wife and two children to the settlement and fragmenting the $20,000 by dividing it among the four of them for the purpose of diminishing the amount of Mr. Fairfield's recovery and thereby diminishing his reimbursement obligations to the Fund. Plaintiff did not disclose any of this background to the Fund when he advised the Fund of what he claimed was his $5,000 settlement.

In the meantime, Mr. Fairfield became engaged in various forms of litigation against his first attorney, including filing a complaint against him with the Board of Bar Overseers. His first attorney's own counsel contacted the Fund's Administrator, defendant Buckley, to have him testify at the BBO hearing on the subject

of the Fund's dealings with plaintiff concerning the settlement.[1] The first attorney's own counsel also forwarded to the Administrator a formal written opinion by a Massachusetts Superior Court judge arising out of separate litigation between plaintiff and his first attorney concerning a fee dispute. In that opinion, the Superior Court noted that Mr. Fairfield had "fragmented" the initial $20,000 settlement into four smaller settlements including other family members as a "way of defeating…a substantial lien by his health insurer [the Fund]."[2]

Upon receipt of the Superior Court's opinion, the Fund refused to acknowledge what it considered an obvious subterfuge and demanded reimbursement calculated on the full $20,000 settlement amount. When Mr. Fairfield refused, the Fund withheld future benefits as provided in its rules governing reimbursement and in the reimbursement agreement that Mr. Fairfield had previously signed. This action followed.

These facts are offered merely by way of background. The complaint alleges a somewhat narrower set of facts and, of course, defendants' motion under Rule 12(b) is confined solely to the facts alleged in the complaint.

### B.     Factual Allegations From the Complaint[3]

Defendant Massachusetts State Carpenters Health Benefits Fund ("Fund") is an employee benefit plan that provides medical coverage to members of the United Brotherhood of Carpenters and Joiners of America. (Complaint ¶ 10). The other two Defendants, Harry Dow and James Buckley, are the Fund's Executive Director and its Administrator, respectively. (Complaint ¶¶ 11-12). Plaintiff Andrew Fairfield is a participant in the Fund, and the three remaining Plaintiffs, Tracy, Megan and Erin Fairfield, are members of his family. (Complaint ¶¶ 6-9).

Andrew Fairfield was involved in a serious automobile accident and required medical treatment, which was paid for by the Fund. (Complaint ¶¶ 13, 20). He retained an attorney to undertake civil litigation against the other driver in the accident, and that attorney negotiated a proposed $20,000 settlement with the other driver's insurance carrier. (Complaint ¶¶ 14-15). The $20,000 offer was made to Andrew Fairfield alone, not to the other Plaintiffs. (Complaint ¶ 15).

The relationship between Andrew Fairfield and his attorney grew acrimonious and Andrew Fairfield fired his attorney and filed a complaint against him at the Board of Bar Overseers. (Complaint ¶¶ 16, 18, 24-26). He then retained a new attorney who negotiated, instead of one $20,000 settlement to Andrew Fairfield, four $5,000 settlements, one each to Andrew Fairfield and the three other Plaintiffs. (Complaint ¶¶ 19, 21). One third of Andrew Fairfield's $5,000 settlement was then paid to the Fund as its reimbursement for the medical expenses it had paid on Andrew Fairfield's behalf.[4] (Complaint ¶ 22). No portion of the other $15,000 was paid to the Fund. *Id.*

Plaintiffs allege that the Fund has withheld benefits payments from Andrew Fairfield or his beneficiaries in an attempt to recover additional reimbursement. (Complaint ¶¶ 27-28). The Fund was allegedly spurred to do so because Andrew Fairfield's first attorney contacted the Defendants as part of his Board of Bar Overseers defense and provided "false, misleading or untrue" information to them. (Complaint ¶¶ 25-27).

## ARGUMENT

In considering a motion to dismiss under Rule 12(b), courts assume all well-pleaded facts in the plaintiff's complaint to be true and make all reasonable

inferences from them in the plaintiff's favor. *See Arrunda v. Sears*, 310 F.3d 13, 18-19 (1st Cir. 2002). A motion to dismiss under Rule 12(b)(6) will be granted where the plaintiff's factual allegations do not justify relief under some theory alluded to in the complaint. *Id.*

Although, to be sure, this standard for reviewing the sufficiency of a complaint is generous in favor of the plaintiff, the First Circuit just last year made it clear that "'notice pleading notwithstanding, Rule 12(b)(6) is not entirely a toothless tiger.'" *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 67 (1st Cir. 2004) (citations omitted). The First Circuit went out of its way to emphasize that, in ruling on motions to dismiss, courts must assess the factual allegations made by the plaintiff and "eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets." *Hernandez, 3*67 F.3d at 67-68 (citation and quotation marks omitted) *citing Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987) *and Arrunda*, 310 F.3d at 18-19, 23.

In addition, disputes concerning the administration of employee benefit plans such as that administered by the Fund and the rights and duties of participants and beneficiaries under those plans are governed solely by the Employee Retirement Income Security Act (ERISA) which, in express and expansive terms, preempts all state laws "relating to" such plans. 29 U.S.C. § 1144(a). In particular, it is well-settled that state law cannot provide an "alternative enforcement mechanism" for a claim for benefits or other rights arising from an ERISA-governed plan. *See New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645, 658 (1995).

The plaintiffs in this case assert one federal claim (Count One), but they include as well five state law claims (Counts Two through Six). The factual allegations in each, however, all return to the same underlying grievance – that the Fund improperly withheld benefits from the plaintiffs. As a result, ERISA preempts all five state law claims and Counts Two through Six therefore should be dismissed.

Plaintiffs' only federal cause of action (Count One) asserts that defendants' actions constitute a breach of their fiduciary duties under ERISA. As with plaintiffs' state law claims, this claim rests on their assertion that the Fund improperly denied benefits, but they assert that, in doing so, defendant breached their fiduciary duties and they seek a declaration under the Declaratory Judgment Act. A claim for breach of fiduciary duty under ERISA, however, is not available to individual plaintiffs who are able to file a direct claim for benefits under ERISA. *Larocca v. Borden, Inc.*, 276 F.3d 22, 28-30 (1st Cir. 2002). Therefore Count One should also be dismissed for lack of subject matter jurisdiction, unless it is reformulated as the direct claim for benefits that it really is.

Additionally, plaintiffs' claims for invasion of privacy and intentional infliction of emotional distress (Counts Five and Six), even on the merits, rely upon "bald assertions" and legal conclusions completely unsupported by factual allegations. *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 67-68 (1st Cir. 2004). They should therefore be dismissed for failure to state a claim. Finally, although the complaint identifies defendant Dow, it makes no further mention of him and the complaint should be dismissed against him.

I.      **ERISA PREEMPTS PLAINTIFFS' STATE LAW CLAIMS (COUNTS TWO THROUGH SIX)**

The Employee Retirement Income Security Act of 1974 (ERISA) governs employee benefit plans such as the defendant Fund.[5]  29 U.S.C. §§ 1101 *et seq.*; *see New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Insurance Co.* ("*Travelers*"), 514 U.S. 645, 650-51 (1995).  It establishes procedures that must be followed in the administration of such plans and guarantees certain rights to plan participants and their beneficiaries.  *Id*.  It also imposes fiduciary duties upon persons performing certain functions for the plan.  *Id.*  Finally, ERISA creates a comprehensive enforcement mechanism for these provisions, including civil litigation by plan participants and beneficiaries to recover benefits to which they may be entitled.  *Id.*; *see also* 29 U.S.C. § 1132(a)(1)(B).

ERISA also includes a broad preemption clause, which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. §1144(a). [6]  The Supreme Court has held that the intent of this provision is "to establish the regulation of employee welfare benefit plans as exclusively a federal concern."  *Travelers*, 514 U.S. at 656-57 (internal quotations omitted).  In passing the broad preemption provision, Congress sought to eliminate the administrative and financial burden that benefit plans would bear if they had to comply with different legal requirements in different states.  *Id.*  To accomplish this purpose, Congress deliberately used "expansive" preemption language.  *Id.* at 655-57; *see also Hampers v. W.R. Grace & Co.*, 202 F.3d 44, 49 (1st Cir. 2000).

Thus, ERISA preempts state laws in so far as they concern "employee benefit structures or their administration."  *Travelers*, 514 U.S. at 657-59; *see also*

*Hampers,* 202 F.3d at 51. ERISA alone governs what benefits a plan provides, how they will be calculated, and whether a particular benefit determination was correctly made. *Id.* In particular, ERISA preempts state laws affecting subrogation provisions in employee benefit plans, such as the one ultimately at issue in this case, which require plan participants to reimburse the plan all or part of any recovery they receive for medical costs paid by the plan. *Travelers,* 514 U.S. at 657-58, *citing FMC Corp.* v. *Halliday*, 498 U.S. 52, 60 (1990).

In addition, ERISA's enforcement mechanisms are exclusive. ERISA preempts state laws in so far as they create "alternative enforcement mechanisms" for the rights of plan participants. *See Travelers,* 514 U.S. at 658; *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 54 (1987), *overruled in part on other grounds, Kentucky Association of Health Plans v. Miller*, 538 U.S. 329 (2003).

> [T]he detailed provisions of § 502(a) [29 U.S.C. §1132(a)] set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

*Pilot Life*, 481 U.S. at 53. "It would be difficult to think of a state law that 'relates' more closely to an employee benefit plan than one that affords remedies for the breach of obligations under that plan." *Turner v. Fallon Community Health Plan, Inc.*, 127 F.3d 196, 199 (1st Cir. 1997).

Thus, the courts have repeatedly and unequivocally held that "ERISA's preemption clause precludes state claims to enforce rights under an ERISA plan or obtain damages for the wrongful withholding of those rights." *Hampers,* 202 F.3d at 49-51

(internal quotations omitted)(collecting cases). Claims arising from "what is *in essence* a plan administrator's refusal to pay allegedly promised benefits" fall within the core of ERISA's preemption provision. *Id.* at 51 (emphasis added).

In determining whether a particular state law claim is preempted, courts must "look beyond the face of the complaint and determine the real nature of the claim regardless of the plaintiff's characterization." *Hampers,* 202 F.3d at 51 (internal quotations omitted), *citing Danca v. Private Health Care Sys., Inc.,* 185 F.3d 1, 5 (1st Cir. 1999). Courts examine whether the state law claim is based on the same underlying conduct as an ERISA claim. *Hampers,* 202 F.3d at 51-52, 54. They also analyze whether they might need to interpret an ERISA-regulated plan in order to determine liability or calculate damages for the asserted state-law cause of action and whether the remedy for the state law claim might involve ordering the plan to pay benefits. *Id.* at 52-54. An affirmative answer to one or more of these questions indicates that the state law claim is preempted by ERISA. *Id.* at 51-54.

As discussed in more detail below, all of plaintiffs' state law claims are grounded upon the Fund's administration of its plan of benefits. Looking beyond the legal characterizations made by the plaintiffs to the specific facts they allege in their complaint, all of their state law claims are, at bottom, attempts to challenge the Fund's determinations concerning their rights and obligations under an employee benefit plan. Plaintiffs' state-law claims are therefore preempted by Section 1144(a).

        **A.**     **ERISA Preempts Count Two, Breach of Contract.**

Count Two of plaintiffs' complaint is a breach of contract claim against the Fund. (Complaint ¶¶ 40-42). It alleges that the Fund agreed to relinquish any right to

reimbursement for medical costs from Andrew Fairfield's accident in exchange for one third of one of the $5,000 settlements offered to the plaintiffs. (Complaint ¶ 41). The complaint alleges that the Fund breached this contract by claiming a right to further reimbursement and withholding benefits from the plaintiffs. (Complaint ¶ 42). Thus, the alleged contract solely concerns the parties' obligations under the plan administered by the Fund, and the breach alleged consists of a refusal to pay benefits due under the plan.

Plaintiffs' breach of contract claim is exactly analogous to one held to be preempted in *Hampers v. W.R. Grace & Co.* 202 F.3d 44, 51-51 (1st Cir. 2000). In *Hampers*, as in this case, the plaintiff alleged the breach of a contract affecting his rights and obligations under an ERISA-regulated plan. *Id.* In this case, as in *Hampers*, the breach of contract claim is preempted because it relies entirely on allegations which would form the basis of a claim for benefits under ERISA. *Hampers,* 202 F. 3d at 51-52, 54. Plaintiffs' contract claim is also preempted because this Court can neither determine liability or damages nor craft an appropriate remedy without reference to the plan administered by the Fund. *See Travelers,* 514 U.S. at 657-58; *Hampers*, 202 F.3d at 52-54.

In short, Count Two is a state-law claim seeking to enforce rights under an ERISA plan and, as such, it is preempted. *See Hampers*, 202 F.3d at 51; *Travelers,* 514 U.S. at 657-59.

      **B.**    **ERISA preempts Count Three, brought under M.G.L. c. 93A.**

In Count Three, plaintiffs allege that the "Fund's breach of contract and denial of benefits to plaintiffs constitute unfair and deceptive trade practices under G.L. Ch. 93A." (Complaint ¶44). Thus, since plaintiffs' Ch. 93A claim derives from their

breach of contract claim, it is preempted for exactly the same reasons that the breach of contract claim asserted in Count Two is preempted. Moreover, where a Ch. 93A claim is "closely related to the denial of benefits under [an ERISA] plan, it is preempted under ERISA." *Tuohig v. Principal Insurance Group*, 134 F.Supp.2d 148, (D. Mass. 2001); *Pariseau v. Albany Int'l Corp.*, 822 F.Supp. 843, 846 (D. Mass. 1993).

    **C. ERISA preempts Count Four, Intentional Interference with Contractual Relationships.**

Count Four is directed solely against defendant James Buckley, and alleges that he interfered with the contract between the plaintiffs and the Fund that is alleged in Count Two. (Complaint ¶¶ 48-49). It is thus preempted for the same reasons that Counts Two and Three are preempted.

In addition, plaintiffs allege that James Buckley is the Health Fund Administrator of the defendant Fund. (Complaint ¶ 12). Therefore, his alleged involvement with the Fund's decision to withhold benefits from the plaintiffs was undertaken in his capacity as the Administrator of the Fund. *See Hampers v. W.R. Grace & Co.*, 202 F.3d 44, 53 (1st Cir. 2000). A claim against a fiduciary or administrator of an ERISA plan for acts taken in that capacity is preempted by ERISA to the same extent that a claim made against the plan would be. *Id.* at 53-54.

    **D. ERISA preempts Count Five, Invasion of Privacy.**

Plaintiffs characterize Count Five, brought against all defendants, as an invasion of privacy claim. (Complaint ¶¶ 51-52). To determine whether this claim is preempted, the court should "look beyond the face of the complaint and determine the real nature of the claim regardless of the plaintiff's characterization." *Hampers,* 202 F.3d at 51; *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 67 (1st Cir.

2004). The facts alleged by Plaintiffs in support of this claim are grounded on their complaint that the Fund improperly withheld benefits.

In the paragraphs under "Count Five," plaintiffs refer to their prior factual allegations and allege that "Defendants' impermissible contact with the Plaintiffs' former attorney constituted an invasion of privacy by disclosing information in a manner highly offensive to a reasonable person and not of legitimate concern." (Complaint ¶ 52).

Concerning this alleged "impermissible contact," plaintiffs elsewhere in the complaint alleged that 1) their former attorney engaged in contact with James Buckley and the Fund as part of his defense to a Board of Bar Overseers proceeding; 2) this contact "provided false, misleading and untrue information [from the former attorney] to Defendants which spurred Defendants to breach their contract of settlement and resolution of the lien claim and caused Plaintiffs each to incur substantial cost and expenses in protecting the amounts due to them under the settlement;" and 3) as a result of this false information defendants withheld benefits under the plan in an attempt to recoup additional reimbursement. (Complaint ¶¶ 26-28).

Thus, the factual allegations against the defendants essentially are that they withheld benefits from the plaintiffs on the basis of false information provided by plaintiff's former attorney. (Complaint ¶¶ 26-28, 52). Because the facts underlying plaintiffs' invasion of privacy claim rest on their complaints concerning the Fund's denial of benefits, the privacy claim is preempted. *See Hampers,* 202 F.3d at 51-52, 54.

### E. ERISA Preempts Count Six, Intentional Infliction of Emotional Distress.

In their final count, Plaintiffs assert a claim of intentional infliction of emotional distress against the Fund's Administrator, James Buckley. (Complaint ¶¶ 53-

54). ERISA preempts a claim of intentional infliction of emotional distress based on even the most egregious denial of benefits by an ERISA plan. *See Tuohig v. Principal Insurance Group*, 134 F.Supp.2d 148, 153-54 (D. Mass. 2001)(distinguishing *Drinkwater v. Metropolitan Life Ins. Co.*, 846 F.2d 821 (1st Cir. 1988)); *Andrews-Clarke v. Travelers Insurance Co.*, 984 F.Supp. 49, FN 23 (D. Mass. 1997)(same).

As with their other claims, plaintiffs' intentional infliction of emotional distress claim ultimately rests on the Fund's alleged improper decision to withhold benefits. (Complaint ¶¶ 53-54). Thus, this claim is preempted as well. *See Hampers,* 202 F.3d at 51-52, 54; *Tuohig,* 134 F.Supp.2d at 153-54; *Andrews-Clarke,* 984 F.Supp. at FN 23.

## II.   PLAINTIFFS CANNOT BRING A CLAIM FOR BREACH OF FIDUCIARY DUTY UNDER ERISA WHERE A CLAIM FOR BENEFITS IS AVAILABLE (COUNT ONE)

Plaintiffs claim that, in denying them benefits, the Fund and the individual defendants beached their fiduciary duties under ERISA, 29 U.S.C. §1104, and they seek a declaration of their rights under the Declaratory Judgments Act. 28 U.S.C. §2201(a). The fundamental problem with Count One is that the Declaratory Judgment Act does not confer subject matter jurisdiction: an independent basis for the court's subject matter jurisdiction is necessary, *see Warner-Jenkinson Co. v. Allied Chemical Corp.*, 567 F.2d 184, 186 (2d Cir. 1977); *National Bank of Fairhaven v. U.S.*, 660 F. Supp 125, 129 (D. Mass. 1987), and plaintiffs' breach of fiduciary duty allegations do not provide that independent jurisdictional basis.

As previously noted, ERISA provides a very comprehensive statutory scheme for enforcing rights and obligations directly under ERISA and arising under plans

of benefits that are governed by ERISA.  29 U.S.C. §1132.   ERISA expressly creates a specific claim for a plan participant "to recover benefits due to him under the terms of his plan" as well to "clarify his rights to future benefits under the terms of the plan."  29 U.S.C. §1132(a)(1)(B).

While ERISA also imposes fiduciary duties and includes in its enforcement scheme provisions for enforcing those duties, 29 U.S.C. §§1104, 1109, 1132 (a)(2), it is well-settled that, given the specific provision in §1132(a)(1)(B) of a claim for benefits, plan participants cannot recharacterize their claims for benefits as fiduciary duty claims under other provisions of ERISA. In *Turner v. Fallon Community Health Plan, Inc.*, 127 F.3d 196 (1st Cir. 1997), the First Circuit squarely rejected a similar effort to recharacterize an ordinary claim for benefits in terms of a breach of fiduciary duty:

> Ronald Turner's position is not improved by invoking fiduciary concepts under ERISA.  Beneficiaries may sue a plan for breach of fiduciary duty causing individual harm, but such suits are allowed only for equitable relief and, even then, *only where Congress has failed to provide more specific relief*.  Neither condition is met here since Ronald Turner seeks damages, not equitable relief, *and his grievance - - a denial of benefits  - - is specifically addressed by* 29 U.S.C. §1132(a)(1)(B).

*Turner*, 127 F.3d at 200(emphasis added); *see also Larocca v. Borden, Inc.*, 276 F.3d 22, 27-30 (1st Cir. 2002).

Plaintiffs' claims in this case are ordinary claims for benefits under §1132 (a)(1)(B), and they are not fiduciary duty claims.  Accordingly, plaintiffs cannot invoke the fiduciary duty provisions of ERISA as the federal jurisdictional basis for a request for relief under Declaratory Relief Judgment Act, and that claim must be dismissed.

### III. PLAINTIFFS FAIL TO ALLEGE FACTS SUPPORTING AN INVASION OF PRIVACY CLAIM (COUNT FIVE)

Even if it were not preempted as an alternative enforcement mechanism for an ERISA claim, Plaintiffs' invasion of privacy claim must fail on the merits. Invasion of privacy is a statutory claim in Massachusetts governed by M.G.L. c. 214 §1B, which prohibits "unreasonable, substantial or serious interference" with a person's privacy. Plaintiffs utterly fail to allege any facts to support such a claim.

In Count Five, plaintiffs allege that "defendants' impermissible contact with the plaintiffs' former attorney constituted an invasion of privacy by disclosing information in a manner highly offensive to a reasonable and not of legitimate concern." (Complaint ¶52). With respect to that "impermissible contact" between their former attorney and defendants and "disclosure" of information, plaintiffs alleged in the body of their complaint as follows:

> 25. The aforementioned dissolution of the attorney-client relationship let to complaint by Plaintiffs Andrew S. Fairfield and Tracy Fairfield against said attorney.
>
> 26. As part of his defense to the Board of Bar Overseers proceeding, the accused attorney directly or indirectly, personally or through his agents, servants, employees or attorneys engaged in impermissible contact with Defendant James W. Buckley, Jr. and Defendant Massachusetts State Carpenters Health Benefit Fund, both of whom violated the privacy rights of the Plaintiffs and the rights of privilege and privacy of the prior attorney associated with the representation of Andrew S. Fairfield.
>
> 27. The aforementioned impermissible contact provided false, misleading and untrue information *to Defendants* which spurred Defendants to breach their contract of settlement and resolution of the lien claim and caused Plaintiffs each to insure substantial cost and expenses in protecting the amounts due to them under the settlement.
>
> (Complaint ¶¶25-27)(emphasis added).

The Complaint thus rests *entirely* on "bald assertions." *Hernandez* 367 F.3d at 67-68. Moreover, plaintiffs allege that their former attorney contacted defendants

and "provided false, misleading and untrue information *to Defendants*." A party's *receipt* of false, misleading and untrue information, however, even where the disclosure of that information would constitute disclosure "of private" information protected by Massachusetts state law, does not amount to an invasion of privacy *by the recipient* under Massachusetts law. See *Dasey v. Anderson*, 304 F.3d 148, 154 (1st Cir. 2002).

IV.  **PLAINTIFFS ALLEGE NO "EXTREME AND OUTRAGEOUS CONDUCT" AS REQUIRED FOR A CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT SIX).**

Even if plaintiffs' final count were not preempted, it would fail to state a claim on the merits because plaintiffs have alleged no "extreme and outrageous conduct" by Defendants. *Beecy v. Pucciarelli*, 387 Mass. 589, 596 (1982). The elements of a claim for emotional distress are:

> (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct . . . (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community, . . . (3) that the actions of the defendant were the cause of the plaintiff's distress. . . and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it.

*Agis v. Howard Johnson Co.*, 371 Mass 140, 145 (1976)(internal quotations and citations omitted). These strict requirements are intended to prevent frivolous suits. *Id.*

Where a complaint alleging intentional infliction of emotional distress does not allege conduct by a defendant which is extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community, it will be dismissed for failure to state a claim. *Beecy*, 387 Mass. at 596; *Quinn v. Walsh*, 49 Mass. App. Ct. 696, 707-09 (2000); *Orono Karate, Inc. v. Fred Villari Studio of Self Defense, Inc.*, 776 F.Supp. 47, 51 (D. N.H. 1991).

The outrageousness of alleged conduct by a defendant must be truly extreme to support a claim of intentional infliction of emotional distress. *Terault v. Mahoney, Hawkes & Goldings*, 425 Mass 456, 466 (1997); *Quinn* 49 Mass. App. Ct. at 696; . It is not enough that the alleged conduct be "reprehensible and a cause for sadness, anger and distress." *Quinn* 49 Mass. App. Ct. at 696.

> [N]or even is it enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

*Terault*, 425 Mass at 466. Courts have dismissed claims of intentional infliction of emotional distress based on conduct far worse than that alleged here. *Butner v. Department of State Police*, 60 Mass. App. Ct. 461, (2004)(doctors conspired with employer to provide inaccurate medical reports to facilitate pregnancy discrimination); *Quinn* 49 Mass. App. Ct. at 707-09 (wife conducted public extramarital affair so as to injure husband).

The only conduct alleged by plaintiffs in this case is that defendants breached a contract because of false statements made to defendant Buckley by Andrew Fairfield's former attorney. (Complaint ¶¶ 22-23, 26-28). Breach of contract is insufficient to support a claim of intentional infliction of emotional distress. *Orono Karate*, 776 F.Supp. at 51. Although plaintiffs' Complaint asserts the legal conclusion that defendants conduct was "extreme and outrageous, beyond all possible bounds of decency and utterly intolerable," the facts they allege fall well short of this threshold. *Contrast* Complaint ¶ 54 *with* Complaint ¶¶ 22-23, 26-28. Therefore, Count Six should be dismissed. *Beecy*, 387 Mass. at 589; *Orono Karate*, 776 F.Supp. at 51.

V. **THE COMPLAINT ALLEGES NO FACTS CONCERNING DEFENDANT DOW**

The complaint alleges that defendant Harry R. Dow is the Executive Director of the Massachusetts State Carpenters Health Benefits Fund. (Complaint ¶11). The complaint, however, thereafter fails even to mention Mr. Dow and accordingly alleges no facts upon which a claim against him may be based. Mr. Dow should be dismissed as a defendant in this action.

## CONCLUSION

Plaintiffs' scorched-earth approach to battling their perceived adversaries has produced a complaint that, at bottom, is nothing but an ordinary claim for benefits under ERISA, but that is pointlessly filled with plainly preempted state law claims. Moreover, plaintiffs did not even properly plead their one federal claim so as to provide this Court with subject matter jurisdiction. This Court should dismiss the complaint in its entirety, and it should dismiss the action unless plaintiffs file an amended complaint that properly pleads a claim under 29 U.S.C. §1132(a)(1)(B).

Date:   May 6, 2005                          Respectfully submitted,
                                             Christopher N. Souris  BBO #556343
                                             KRAKOW & SOURIS LLC
                                             225 Friend Street
                                             Boston, MA 02114   (617) 723-8440
                                             _/s/ Christopher N. Souris_____
                                             Attorney for defendants

## CERTIFICATE OF SERVICE

I, Christopher N. Souris, hereby certify that I caused a copy of the foregoing to be served this 5th day of May, 2005 Robert H. Flynn, Daly, Cavanaugh & Flynn, LLP

27 Mica Lane, Wellesley, MA 02481

_____
Christopher N. Souris

_____

[1] The BBO hearing officer eventually recommended dismissal of Mr. Fairfield's complaint.

[2] The first attorney eventually prevailed in the litigation concerning attorney's fees due from Mr. Fairfield.

[3] The following allegations are taken from the Plaintiffs' Complaint. Solely for the purpose of a motion to dismiss, the Plaintiff's factual assertions are taken as true. *Arrunda v. Sears*, 320 F.3d 13, 18-19 (1st Cir. 2002). Defendants do not otherwise admit any of the following allegations.

[4] The Complaint alleges that this payment was pursuant to a settlement contract in which the Fund clearly released all claims for reimbursement for Andrew Fairfield's medical expenses. (Complaint ¶¶ 22-23).

[5] There is no dispute that the Fund is an employee benefit plan regulated by ERISA. (Complaint ¶ 33).

[6] Section 1144 also enumerates certain exceptions to ERISA preemption not relevant to this case. 29 U.S.C. § 1144(b).